C.F. Halstead appeals from the trial court's judgment in favor of H. Jack Windsor in an action to quiet title.
On October 11, 1982, C.F. Halstead entered into an installment sales contract or "bond for title" to sell property to Lewis Wainwright.[1] Under the agreement, Halstead agreed to convey the property to Wainwright upon payment of the purchase price in full. In the event of default, Halstead would have the right to annul the agreement, Wainwright would become Halstead's tenant, and any money paid in the interim would be retained by Halstead as rent. The agreement did not provide that time was of the essence, and Halstead regularly accepted payments that were delinquent under the terms of the contract.
On November 16, 1988, H. Jack Windsor obtained from Wainwright a mortgage on the property, to secure payment of two promissory notes owed by Wainwright to Windsor. Wainwright became delinquent in his payments on both the bond for title agreement and the notes. By December 1989, Wainwright was approximately four months behind on payments on the bond for title agreement. On December 6, 1989, Windsor began running a newspaper advertisement of foreclosure, as he was required to do under the terms of the mortgage before he could foreclose; he ran it for three consecutive weeks. Also, on December 6, 1989, Wainwright executed a deed in lieu of foreclosure, conveying the property back to Halstead. On December 20, 1989, Windsor executed a foreclosure deed on the property.
On January 5, 1990, Windsor's attorney notified Halstead that Windsor had foreclosed on the property and notified him that Windsor offered either to pay the balance owed to Halstead by Wainwright or to continue the payments according to the terms of the bond for title agreement. On October 15, 1990, Windsor's attorney notified Halstead that Windsor claimed a right to redeem the property under Ala. Code 1975, § 6-5-248, and made demand, pursuant to Ala. Code 1975, § 6-5-252, for a statement of all debts and charges claimed by Halstead against the property. Halstead then sued to quiet title to the property; Windsor counterclaimed, asking the court to grant him the right to redeem the property. Wainwright disclaimed any interest in the property and was dismissed from this action.
The issue is whether the holder of a mortgage on property subject to a bond for title has a right to redeem the property or to sue for specific performance where the vendee under the bond for title has given the vendor a deed in lieu of foreclosure.
The trial court held that the bond for title agreement created in Wainwright an interest that could be made subject to a mortgage by Wainwright. The court then held that Windsor was entitled to redeem the property from Halstead within one year after Wainwright had executed the deed in lieu of foreclosure in favor of Halstead, pursuant to Ala. Code 1975, § 6-5-248. The court held that Halstead was due to be credited with interest from December 6, 1989, and that Windsor should be credited with the fair rental value of the property, with interest, from the same date, less rents collected by Windsor.
Halstead argues that the trial court's decision is in error, because, he contends, § 6-5-248 applies only to "mortgages" and the bond for title agreement, he says, is not a "mortgage." He notes that this Court, in Gay v. Tompkins, 385 So.2d 973
(Ala. 1980), distinguished the rights one holds under a real estate mortgage from the rights one holds under a bond for title or a contract for the sale of land:
 "The use by equity of the real estate mortgage as an analogy for the limited purpose of security and for rents and profits did not make the land contract itself a mortgage. Nothing in Ashurst [v. Peck, 101 Ala. 499, 14 So. 541 (1894),] leads to such a broad conclusion, and, especially, nothing therein gives to a contract for the sale of land the equity of redemption. And because Ashurst did not refer to that contract *Page 1126 
as a 'bond for title,' a fortiori any reference to an 'equity of redemption' having been established for such an instrument as a contract for the sale of land is unwarranted."
Gay, 385 So.2d at 978 (emphasis original). Additionally, we held in Gay that the doctrine of "equitable mortgage" did not apply to the relation of vendee to vendor under a bond for title and that an action to enforce the "equity of redemption" as to a bond for title is an action by the vendee for specific performance. Gay, 385 So.2d at 980. Therefore, Halstead argues, there is no statutory right of redemption in regard to a bond for title. Halstead contends that Windsor's only right under the mortgage given to him by Wainwright was the right to specific performance up until the time the contract for sale between Wainwright and Windsor was declared void because of Wainwright's default.
We agree with Halstead that there is no statutory right of redemption in this case. While a mortgage is defined as "[a]ny mortgage, deed of trust, or any other instrument intended to secure the payment of money, such as an instrument which includes a vendor's lien," Ala. Code 1975, § 6-5-247(2), and a bond for title is clearly an "instrument intended to secure the payment of money,"[2] the statutory right of redemption is activated only "[w]here real estate, or any interest therein, is sold." § 6-5-248. There is no "sale" in this case. A "sale" is defined as "[a]ny execution, judgment, or foreclosure sale, whether the sale is made under any power of sale in any mortgage or deed of trust or statutory power of sale, or by virtue of any judgment in any court of competent jurisdiction." § 6-5-247(1). Without a sale, there is no statutory right of redemption. See Commentary, Ala. Code 1975, § 35-10-51 ("The agreement, whether called a sale in lieu of foreclosure, or any similar name, may provide for a period of redemption, but there is no statutory redemption right in the mortgagor because there is no foreclosure of the mortgagor's rights.").
This case concerns a "deed in lieu of foreclosure," instead of a sale. Deeds in lieu of foreclosure are governed by Ala. Code 1975, §§ 35-10-50 and 35-10-51. The definition of "mortgage" that applies to the article containing these sections is broad enough to include a bond for title agreement. Compare § 35-10-50(2) (defining "mortgage" as "[a] mortgage, deed of trust or similar security instrument on real property, or instrument creating a vendor's lien on real property, securing the payment of money"), with § 6-5-247(2) (defining "mortgage" as "[a]ny mortgage, deed of trust, or any other instrument intended to secure the payment of money, such as an instrument which includes a vendor's lien"). A deed in lieu of foreclosure "[t]ransfers to the mortgagee all right, title, and interest of the mortgagor in the mortgaged property, including but not limited to all rights of redemption, statutory orequitable, unless expressly otherwise provided therein." Ala. Code 1975, § 35-10-51(1) (emphasis added); Beasley v.Mellon Financial Services Corp., 569 So.2d 389, 393 (Ala. 1990). Thus, any right of redemption was extinguished by the deed in lieu of foreclosure. Likewise, any cause of action for specific performance was also extinguished. See Gay v. Tompkins, supra (holding that the "equity of redemption" for the vendee of a bond for title "in reality is a suit by the vendee for specific performance"). Therefore, the trial court erred in holding that Windsor was entitled to a statutory right of redemption from Halstead. *Page 1127 
The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
[1] The agreement was initially between C.F. Halstead and Lewis and Mary Wainwright. Lewis and Mary Wainwright have since divorced, and under the divorce settlement Mary released all her rights, title, and interest in the property.
[2] See Loventhal v. Home Ins. Co., 112 Ala. 108, 114, 20 So. 419,420 (1895) ("we must regard [the vendee] as owner of the property; and just such an owner as she would have been, if her vendor had conveyed to her, by deed, the entire, absolute and unconditional estate therein, in fee simple, and she had reconveyed it to him, by way of mortgage, to secure payment of the purchase money"); Lowery v. Peterson, 75 Ala. 109, 111
(1883) ("When . . . a vendor of lands retains in himself the legal title, covenanting or agreeing to convey it at a future day, upon condition that the vendee makes payment of the purchase-money, he carves out his own security, which is in the nature of a mortgage. . . . The relation of the parties is analogous to, if not precisely, that which would have been created, if the vendor had made a conveyance of the legal estate, and, contemporaneously, the vendee had executed a mortgage to secure the payment of the purchase-money."); and J. Thaddeus Salmon, Comment, Bonds for Title in Alabama, 3 Ala.L.Rev. 327, 328 (1951) ("the retention of the legal title by the vendor is simply a security for the debt").