In re James M. TAUNTON and Alice
Faye Taunton, Debtors.

James M. Taunton and Alice Faye
Taunton, Appellants,

v.

Curtis C. Reding, Chapter
13 Trustee, Appellee.

No. 01–T–1326–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Feb. 9, 2004.

Charles G. Reynolds, Jr., Lanett, AL, for Debtors/Appellants.

Sabrina L. McKinney, Montgomery, AL, for Appellee.

## OPINION

MYRON H. THOMPSON, District Judge.

Appellants James M. Taunton and Alice Faye Taunton appeal the decision by the Bankruptcy Court of the Middle District of Alabama that sustained the objection of appellee Curtis C. Reding, Chapter 13 trustee, to confirmation of their Chapter 13 bankruptcy plan. The bankruptcy court agreed with the trustee that a parcel of real property was not, but should be, included in appellants' bankruptcy estate. Appellants contend that the property is the subject of a lease-purchase arrangement with their son, who holds equitable, if not legal, title such that the property cannot be included in the estate. Appellate jurisdiction over this case is proper under 28 U.S.C.A. § 158(a). For the reasons that follow, the decision of the bankruptcy court is affirmed.

## I. STANDARD OF REVIEW

This district court "functions as an appellate court in reviewing the bankruptcy court's decision." *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990) (citing 28 U.S.C.A. § 158(a)). Accordingly, the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the Bankruptcy Judge to judge the credibility of witnesses." Fed. R. Bankr.P. 8013; *see also* Fed. R. Bankr.P. 7052. Because district courts lack "the authority to make independent findings of fact" when hearing an appeal from the bankruptcy court, Fed. R. Bankr P. 7502, 8013, this court must remand the case "if the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question." *Sublett*, 895 F.2d at 1384.

In contrast to the deference given to factual findings, this court examines the bankruptcy court's legal conclusions *de novo*. *In re Club Associates*, 951 F.2d 1223, 1228–29 (11th Cir.1992) (courts hearing appeals from the bankruptcy court may "freely examine[ ] the applicable principles of law to see if they were properly applied"). Similarly, this court may "freely examine[ ] the evidence in support of any particular finding to see if it meets the test of substantiality." *In re Thomas*, 883 F.2d 991, 994 (11th Cir.1989).

## II. RELEVANT FACTS

The Tauntons hold legal title to two pieces of real property: the Taunton homestead and a lot in Green Acres subdivision on which is a three-bedroom home. The Green Acres property, worth approximately $ 40,000, was encumbered by a $ 40,000 mortgage given by Valley National Bank. On January 26, 1998, the Tauntons contracted with their son, Michael

Campbell, for the sale of the Green Acres property via what is commonly known as a "lease-purchase arrangement" or a "bond for title." Under the contract, Campbell agreed to pay the Tauntons' monthly mortgage payments on the property to Valley National Bank, and the Tauntons agreed that they would transfer the deed to the property to Campbell when he had paid off the mortgage in full. The balance remaining on the mortgage at the time of the contract was $ 33,239.29. Campbell has since made all payments in a timely manner and is currently in possession of the Green Acres property.

The Tauntons filed for bankruptcy on June 4, 2001. At the time of filing, the outstanding mortgage balance on the Green Acres property had been paid down to $ 29,000 by Campbell. In their bankruptcy petition, the Tauntons listed the value of their interest in the Green Acres property at "$ 0," citing their lease-purchase arrangement with Campbell. The trustee contends that the Green Acres property is still owned by the Tauntons and, furthermore, that the equity in that property should be tapped in order to provide an additional $ 11,000 that could be distributed to the Tauntons' unsecured creditors, who currently would receive only 20% of their claims against the Tauntons under the plan.[1] On this basis, the trustee objected to the confirmation of the bankruptcy plan. That objection was sustained by the bankruptcy court, and the Tauntons have appealed that decision to this court.

## III. DISCUSSION

■ The bankruptcy court is clearly correct in its decision that, under Alabama law, the Green Acres property is currently owned, both legally and equitably, by the Tauntons and, therefore, that the property should be included in the Tauntons' bankruptcy estate. A lease-purchase agreement creates no current interest in land, legal or equitable, in the lessee. Rather, under Alabama law, the only right possessed by the lessee is the equitable contractual right of specific performance, to force the seller to present him with title upon his completion of his contractual obligations. That right of specific performance arises only upon the lessee's full performance of the contractual terms; it gives him no current interest in the property beyond the possession guaranteed as a tenant of the Tauntons. *See generally Halstead v. Windsor,* 662 So.2d 1124 (Ala. 1995); *Gay v. Tompkins,* 385 So.2d 973 (Ala.1980).[2]

■ While the contract with Campbell does not have the effect of lessening the interest of the Tauntons in the property, as, under Alabama law, they are still the sole owners of that property (legally and equitably), it does have the effect of less-

---

1. Although the property itself does not have to be sold in a Chapter 13 proceeding, the value of the property must be accounted for in determining what amount the unsecured creditors receive from the Tauntons under the plan. 11 U.S.C.A. § 1325(a)(4) (allowing confirmation of a bankruptcy plan only if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date"). If the value of the property is not taken into account, the plan runs the risk of providing a fund in an amount less than that available to creditors under a Chapter 7 liquidation, preventing confirmation.

2. The court realizes that Alabama caselaw is often opaque on doctrinal points like the legal effect of a lease-purchase arrangement for the sale of land. However, the more recent and thorough cases confirm that no interest in the property itself inheres in the lease-purchaser; rather, his interest is contractual until the payments are completed.

ening the *value* of that interest. Under Chapter 13, the creditors must receive at least as much under the plan as they would receive under a hypothetical Chapter 7 liquidation proceeding. This process can often be complex, as it requires the valuation of contingent interests, causes of action, disputed claims, and other assets of the debtors that may not be subject to an easy calculation of worth. *See, e.g., In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr.W.D.Mo.2000); *In re Sierra–Cal*, 210 B.R. 168, 172 (Bankr.E.D.Cal.1997).

At the same time, Campbell's contract survives the Tauntons' bankruptcy filing; he still retains an opportunity to continue payments and eventually take title to the Green Acres property. 11 U.S.C.A. § 365(i). That is, the Tauntons appear to have two options of how to deal with this contract with Campbell. They may choose to assume the contract, in which case the contractual provisions will control, and Campbell will be entitled to obtain title to the land upon paying the full purchase price as contemplated in the contract. Alternatively, the debtors may choose to reject the contract, in which case Campbell has two options in response. The relevant section of the bankruptcy code dealing with the rejection by debtors of executory contracts for the sale of land is 11 U.S.C.A. § 365(i), which states:

"(1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest."

"(2) If such purchaser remains in possession-(i) such purchaser shall continue to make all payments due under such contract ...; and (ii) the trustee shall

deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract."

The commentary to that statute confirms that "Subsection (i) gives a purchaser of real property under a land installment sales contract similar protection [as lessees under unexpired leases, who are protected under subsection (h)]." Therefore, Campbell could treat the rejected contract as terminated, in which case he would be entitled to sue for damages resulting from that breach. Alternatively, Campbell could remain in possession of the property and continue making payments under the contract, in which case he would be entitled to receive title upon completion of the contract's terms.

The question whether Campbell's contract with the Tauntons was "executory" within the meaning of § 365(i), such that it can be rejected or accepted by the debtors, has not been touched on by the parties to this appeal. However, this court believes that the Eleventh Circuit's discussion of the issue in *In re General Dev. Corp.*, 84 F.3d 1364 (11th Cir.1996), compels the conclusion that the lease-purchase agreement in this case is an "executory contract" within the meaning of these statutory provisions that must be either accepted or rejected by the debtors. *See also In re Health Science Products, Inc.*, 183 B.R. 903, 936 n. 45 (Bankr.N.D.Ala.1995). If the lease-purchase contract is not executory, it is most properly considered a secured debt arrangement. 3 Collier on Bankruptcy ¶ 365.02[1][a], at 365–5. In other words, there should be no possibility that the contract will fall through the cracks, affording the nondebtor-lessee no relief. The bankruptcy plan, as now proposed, chooses neither option explicitly: Campbell's claim is not presented as a

secured claim, nor is the contract identified as a rejected executory contract.

The bottom line, for purposes of this appeal, however, is that the value of the Tauntons' interest in the property therefore may not be the $ 11,000 in equity that currently exists on that property. That $ 11,000 in equity is not unrestricted, because to obtain that $ 11,000 in equity, the Tauntons would be forced to materially breach their contract with Campbell, by either selling the property or taking another mortgage out on the property.[3] Therefore, even if the property has $ 11,000 of equity in the abstract, the reality of the situation is that the Tauntons have no ability to tap that equity without becoming liable for materially breaching the Campbell contract.

However, having responded to the central issue of this appeal, that being whether the Tauntons have an interest in the Green Acres property for which they should hold account in their bankruptcy estate, this court will not proceed to valuate that interest. Rather, such valuation will be left for the parties and the bankruptcy court to consider on remand.

## IV. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court, that the property should properly be included in the bankruptcy estate of the Tauntons, should be affirmed, and this matter remanded for proceedings not inconsistent with this opinion.

An appropriate judgment will be entered

---

**3.** Lease Purchase Agreement with Existing Mortgage ¶ 3.