**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1931

In Re: RAILWORKS CORPORATION,

Debtor.

---------------------------

ZVI GUTTMAN, Litigation Trustee,

Plaintiff - Appellee,

v.

CONSTRUCTION PROGRAM GROUP,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  James K. Bredar, District Judge. (1:13-cv-00385-JKB; 01-64463; 03-05363)

Argued: March 18, 2014                    Decided: July 28, 2014

Before KEENAN and FLOYD, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Reversed and remanded with instructions by published opinion. Judge Floyd wrote the opinion, in which Judge Keenan and Judge Cogburn joined.

**ARGUED**: Annapoorni Rohini Sankaran, GREENBERG TRAURIG, LLP, Houston, Texas, for Appellant.  Zvi Guttman, LAW OFFICES OF ZVI

GUTTMAN, PA, Baltimore, Maryland, for Appellee. **ON BRIEF**: Lori Simpson, LAW OFFICE OF LORI SIMPSON, LLC, Baltimore, Maryland; Elliot H. Scherker, GREENBERG TRAURIG, P.A., Miami, Florida, for Appellant. Richard M. Goldberg, SHAPIRO, SHER, GUINOT & SANDLER, Baltimore, Maryland, for Appellee.

―――――――――

FLOYD, Circuit Judge:

This appeal concerns the efforts of Zvi Guttman, the Chapter 11 Litigation Trustee for the estate of Railworks Corporation (Railworks), to avoid and recover premium payments that Railworks transferred to the Construction Program Group (CPG), which later transferred them to TIG Insurance Company (TIG). Railworks made the transfers within ninety days before Railworks filed for bankruptcy protection.

The bankruptcy court granted summary judgment in favor of CPG, thus preventing Guttman from avoiding and recovering the premium payment transfers to CPG. The district court vacated the bankruptcy court's grant of summary judgment and remanded the case to the bankruptcy court for further proceedings. CPG then noted this appeal. We have jurisdiction over the matter under 28 U.S.C. § 1291.

For the reasons that follow, we hold that the bankruptcy court's grant of CPG's summary judgment motion was proper. As such, we reverse the district court's decision and remand with instructions to reinstate the bankruptcy court's judgment.


I.

Railworks is a national provider of rail systems services. On September 20, 2001, it filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. TIG provided general

3

liability, automobile, and workers' compensation insurance to Railworks. CPG was TIG's managing general underwriter.

Before CPG became TIG's managing general underwriter, Sherwood Insurance Services (Sherwood) and TIG entered into a General Agency Agreement (Agreement), with an effective date of December 15, 1996, in which Sherwood agreed to provide to TIG its "expertise in soliciting, developing, marketing, underwriting, and issuing contracts of insurance." The Agreement provided that Sherwood would collect, receive, and account for the premiums on the insurance policies. Because CPG at some point became Sherwood's successor in interest, the relationship that previously existed between Sherwood and TIG became one between CPG and TIG, with the Agreement continuing to define the relationship between the two parties. We set forth the relevant portions of the Agreement below.

First, section 1.2 allowed CPG, among other things, "to effect cancellation and non-renewal of Policies."

Second, section 3.4 stated that CPG would "not act as an insurer for any insureds, and th[e] Agreement shall not be construed as an insurance policy or any contract or agreement of indemnity of insureds."

Third, under section 5.1, CPG "shall be liable for and shall pay to [TIG] all net premiums attributable to the Policies produced hereunder, whether or not such premiums have been

4

collected by [CPG] less Commissions, as defined in section 6.1

of th[e] Agreement."

Fourth, according to section 5.2:

> All premiums collected by [CPG] are the property of
> [TIG] and shall be held in trust on behalf of [TIG] in
> a fiduciary capacity ("Premium Trust Funds") and shall
> be deposited and maintained in an account separate and
> segregated from [CPG's] own funds or, at [CPG's]
> option, the Premium Trust Funds may be maintained in a
> pooled account maintained by affiliates of [CPG] for
> the investment of fiduciary funds (the "Premium Trust
> Account"). The Premium Trust Account shall be
> maintained in an account at least equal to the
> premiums (unpaid to [TIG]), and return premiums
> (unpaid to policyholders or insureds) received by
> [CPG] less return premiums due to cancellations and
> endorsements. After such funds have been deposited
> into the Premium Trust Account, [CPG] may deduct from
> such account the appropriate Commission. The
> privilege of retaining Commission shall not be
> construed as changing this fiduciary relationship.
>
> [TIG] authorizes [CPG] to retain premiums in an
> interest-bearing trust account in a non-affiliated
> bank approved by [TIG] in writing which meets the
> "Premium Trust Account Guidelines," . . . with
> interest payable to [CPG] until such amounts are due
> to [TIG] as set forth [in another section of the
> Agreement], and to deduct Commissions from the
> premiums so collected.
>
> [CPG] shall be responsible for full compliance with
> all applicable laws, regulations, rules, and
> requirements regarding the Premium Trust Funds.

And finally, section 6.1 provided that TIG would pay to CPG

"a Commission on gross premiums for all Policies written and

received pursuant to the Commission Schedule."

Guttman filed a complaint seeking to avoid and recover the

premium payment transfers that Railworks made to CPG during the

5

ninety days preceding Railworks' filing of its Chapter 11 bankruptcy petition. The parties later filed cross-motions for summary judgment. Having considered the parties' motions, the bankruptcy court denied Guttman's motion for summary judgment and granted CPG's motion. This had the effect of not allowing Guttman to avoid and recover the premium payments that Railworks transferred to CPG during the ninety days before Railworks' filing for bankruptcy. On appeal, the district court vacated and remanded the bankruptcy court's judgment. CPG then filed this timely appeal.

## II.

There are two bankruptcy statutes at play in this appeal: the preference avoidance statute, 11 U.S.C. § 547, and the recovery statute, id. § 550.

## A.

Section 547 defines certain transfers that were made out of the debtor's estate before the filing of the bankruptcy petition as "preferences" and allows the trustee to avoid them. Vogel v. Russell Transfer, Inc., 852 F.2d 797, 798 (4th Cir. 1988). As explained by the House Committee on the Judiciary regarding the Bankruptcy Reform Act of 1978, and relied upon by the Supreme Court in Union Bank v. Wolas,

6

> A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

502 U.S. 151, 160-61 (1991) (quoting H.R. Rep. No. 95-595, at 177–78 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6137-38).

> Under § 547(b),

> there are six elements that must be proved in order for a transfer to be set aside as preferential. The transfer must have been: (1) of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety days of the filing of the bankruptcy petition; and (6) it must enable the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Bankruptcy Code.

Morrison v. Champion Credit Corp. (In re Barefoot), 952 F.2d 795, 798 (4th Cir. 1991).

7

B.

As set forth in § 550(a)(1):

to the extent that a transfer is avoided under section
. . . 547 . . . of this title, the trustee may
recover, for the benefit of the estate, the property
transferred, or, if the court so orders, the value of
such property, from—

(1) the initial transferee of such transfer or
the entity for whose benefit such transfer was made.

11 U.S.C. § 550(a)(1).

"The Bankruptcy Code does not define the term 'initial transferee.' This Court applies the 'dominion and control' test to determine whether an entity qualifies as the 'initial transferee.'" Grayson Consulting, Inc. v. Wachovia Sec., LLC (In re Derivium Capital LLC), 716 F.3d 355, 362 (4th Cir. 2013) (quoting Bowers v. Atlanta Motor Speedway, Inc. (In re Se. Hotel Props. Ltd. P'ship), 99 F.3d 151, 155–56 (4th Cir. 1996)). Under this test, "an initial transferee must (1) have legal dominion and control over the property—e.g., the right to use the property for its own purpose—and (2) exercise this legal dominion and control." Id. "[A] party cannot be an initial transferee if he is a 'mere conduit' for the party who had a direct business relationship with the debtor." In re Se. Hotel Props. Ltd. P'ship, 99 F.3d at 155.

"[T]he entity for whose benefit the transfer was made cannot be a subsequent transferee of the property, but rather

8

'is a guarantor or debtor—someone who receives the benefit but not the money.'" Id. (alteration omitted) (citation omitted) (quoting Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.), 892 F.2d 26, 29 (4th Cir. 1989) (internal quotation marks omitted)).

C.

The avoidance of a transfer and the recovery from the transferee are distinct from one another. Suhar v. Burns (In re Burns), 322 F.3d 421, 427 (6th Cir. 2003). Although the avoidance of a transfer is necessary to recover from a transferee, avoidance of a transfer does not automatically entitle the trustee to a recovery under § 550. Id. "[T]he transaction must first be avoided before a plaintiff can recover under 11 U.S.C. § 550." IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 703 (11th Cir. 2005). "After § 547 defines which transfers may be avoided, § 550(a) identifies who is responsible for payment: 'the initial transferee of such transfer or the entity for whose benefit such transfer was made.'" Levit v. Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1194 (7th Cir. 1989) (quoting § 550). Of course, if the funds are not recoverable under § 550, then it matters not whether they are avoidable under § 547.

III.

When we consider an appeal from a district court acting as a bankruptcy appellate court, we make a de novo review of the legal conclusions of both the district court and the bankruptcy court. Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja), 743 F.3d 423, 429 (4th Cir. 2014). "Like the district court, we review for clear error the factual findings of the bankruptcy court." Id.

First, CPG maintains that the district court erred in concluding that Guttman properly pled his claims under §§ 547 and 550. We can quickly dispense with this argument. Suffice it to say that we have long held that a plaintiff is not limited by any one specific legal theory set forth in the complaint. New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963) ("[The plaintiff] need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it upon any theory."). "Rule 8(a)(2) of the Federal Rules of Civil Procedure," which is made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7008(a), "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011). In short, we think that Guttman has sufficiently pled his §§ 547 and 550 claims.

10

Although CPG argues that the district court erred in holding that Guttman satisfied the requirements of both §§ 547 and 550, if we hold that Guttman cannot recover the premium payment transfers under § 550, then that determination will be dispositive of the appeal and we will not need to decide whether the premium payment transfers can be avoided under § 547. So, we begin there with our analysis.

As we have already noted, "the trustee may recover, for the benefit of the estate, the property transferred . . . from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Guttman does not dispute the bankruptcy court's determination that CPG was not an initial transferee but instead states that CPG was an entity for whose benefit the premium payment transfers were made.

The district court held, and Guttman agrees, "that CPG occupied a dual status, both as a 'mere conduit' of money between Railworks and TIG and as one for whose benefit the transfer occurred." Guttman v. Constr. Program Grp. (In re Railworks Corp.), No. JKB–13–385, 2013 WL 3427897, at *6 (D. Md. July 8, 2013). The district court stated that "CPG was contingently liable to TIG for Railworks's premiums." Id. But, according to the court, when the premiums were paid to TIG, that contingent liability was extinguished. Id. "A recognized

11

basis for concluding that an entity benefited from an avoidable transfer is the extinguishment of contingent liability." Id. Therefore, the district court concluded, "CPG is an entity for whose benefit the avoided transfers were made, and [Guttman] is entitled under § 550(a)(1) to recover the net premiums from CPG." Id. We cannot yield to the force of this reasoning.

We long ago held that "a party cannot be an initial transferee if he is a mere conduit for the party who had a direct business relationship with the debtor." In re Columbia Data Prods., 892 F.2d at 28. Contrary to the district court's conclusion, it is also true that a party—in this instance CPG—cannot be an entity for whose benefit the transfer was made if it is a mere conduit for the party that had a direct business relationship with the debtor. This dispute presents a perfect example as to why this is so.

Everyone agrees that CPG was a "mere conduit": the parties, the bankruptcy court, and the district court. As the bankruptcy court aptly observed, "Paragraph 5.2 of the Agreement created an express trust, with CPG as trustee in favor of TIG. Therefore, while CPG had physical control over the transfers it received, it did not have the legal right to use them as it pleased." Guttman v. Constr. Program Grp. (In re Railworks Corp.), Nos. 01-64463-JS, 01-64485-JS, 01-64463-JS, 2012 WL 6681894, at *10 (Bankr. D. Md. Dec. 21, 2012) (citation omitted). Instead, the

12

Agreement mandated that CPG, the agent, hold the funds in trust for TIG, the principal.  Id.  This arrangement is set out in the agency section—section 5.2—of the Agreement.

Yet, according to Guttman and the district court, section 5.1 of the Agreement made CPG a contingent creditor of Railworks inasmuch as CPG was contingently liable to TIG for Railworks's premium payments.  So, Guttman contends—and the district court held—that the  remittance of Railworks's premium payments to TIG extinguished CPG's contingent liability to TIG.  And, according to Guttman and the district court, because the extinguishment of that contingent liability benefitted CPG, Guttman satisfied "the entity for whose benefit such transfer was made" component of § 550, thus allowing him to recover the premium payment transfers.

But, as CPG states, if that were true, then a conduit would always be contingently liable—and thus an entity for whose benefit a transfer was made.  This is so because a conduit, by definition, has an obligation to pass the funds on to a third party, and, if he fails to pass the funds to the third party, he is liable for those funds.

If we were to adopt Guttman and the district court's position that one can be both a "mere conduit" and "one for whose benefit the transfer occurred" we would eviscerate the conduit defense—something that we are unwilling to do.  Consequently, because CPG was unquestionably a mere conduit for

13

the premium payments between Railworks and TIG, and a party cannot be both a mere conduit and an entity for whose benefit a transfer was made, Guttman is unable to recover the premium payment transfers under § 550.

IV.

For the foregoing reasons, we hold that the bankruptcy court's decision granting summary judgment to CPG was correct. Therefore, we reverse and remand the district court's decision with instructions to reinstate the bankruptcy court's judgment.[*]

REVERSED AND REMANDED
WITH INSTRUCTIONS

---

[*] We note that the bankruptcy court's grant of summary judgment was grounded on some bases not discussed here. As such, although we agree on the correctness of the bankruptcy court's ultimate grant of summary judgment to CPG, we express no opinion as to its reasons for doing so.

14