Concurrence by Judge KORMAN
OPINION
M. SMITH, Circuit Judge:
In this preference action, plaintiff-appellant E. Lynn Schoenmann (Schoenmann), the trustee in bankruptcy, seeks to recover for the bankruptcy estate a $190,595.50 loan payment debtor Tenderloin Health (Tenderloin) made to defendant-appellee Bank of the West (BOTW) within ninety days of the filing of Tenderloin’s chapter 7 bankruptcy. To succeed, Schoenmann must demonstrate that by virtue of that payment BOTW received more than it otherwise would have in a hypothetical chapter 7 liquidation where the challenged transfer had not been made. This inquiry, required by 11 U.S.C. § 547(b)(5), is called the “greater amount test.”
The bankruptcy court granted BOTW’s motion for summary judgment, finding Schoenmann could not satisfy section 547(b)(5), because BOTW had a right of setoff, and Tenderloin’s account contained at least $190,595.50 on the petition date. Schoenmann asserts that in the hypothetical liquidation, the trustee would avoid a $526,402.05 deposit, leaving less than $190,595.50 in Tenderloin’s account, even allowing for BOTW’s right of setoff.
*1234 In order to resolve the issues presented in this case, we address whether courts may entertain hypothetical preference actions within section 547(b)(5)’s hypothetical chapter 7 liquidation, and if so, whether the $526,402.05 deposited in this case would meet the definition of an avoidable preference.
We conclude that courts may account for hypothetical preference actions within a hypothetical chapter 7 liquidation when such an inquiry is factually warranted, is supported by appropriate evidence, and the action would not contravene an independent statutory provision. We are also satisfied that the $526,402.05 deposit in this case would constitute an avoidable preference in the hypothetical liquidation at issue here.
We therefore reverse the district court’s judgment in favor of BOTW and direct that this action be remanded to the bankruptcy court for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
In May 2009, BOTW extended a $200,000 line of credit to Tenderloin, a waík-in clinic serving AIDS patients in San Francisco. BOTW loaned another $100,000 to Tenderloin two years later. The loans were secured by Tenderloin’s personal property, including its deposit accounts with BOTW.
In late 2011 or early 2012, Tenderloin elected to wind up its affairs. In carrying out that election, it sold its only real property for $1,295,000. The escrow on that sale closed on June 13, 2012. Tenderloin used the proceeds of that sale to execute two transactions that same day. First, it paid BOTW $190,595.50 from escrow to satisfy fully its outstanding loan obligations (debt payment). Next, it moved the rest of its net sale proceeds — $526,-402.05 — from escrow into its BOTW deposit account (the deposit).
On July 20, 2012, Tenderloin filed for chapter 7 bankruptcy. Ninety days prior to filing, its account contained approximately $173,015.00.[1] That sum shrunk to $52,735.11 on the date of the two disputed transfers, but grew to $576,603.03 immediately after the deposit. Tenderloin then spent some of its funds in the days preceding its bankruptcy, so the account contained $564,115.92 on the petition date. If we subtract from that sum the. amount of the disputed deposit — $526,402.05—Ten-derloin’s account would have contained only $37,713.87 on the petition date.
Schoenmann sued BOTW on December 12, 2012, alleging that the debt payment was preferential, and subject to avoidance under 11 U.S.C. § 547(b). The bankruptcy court granted BOTW’s motion' for summary judgment on July 31, 2013, concluding that Schoenmann could not show that BOTW received more than it would have in a hypothetical liquidation where the debt payment had not been made. Schoen-mann appealed to the district court pursuant to 28 U.S.C. § 158(a)(1). The district court affirmed, and Schoenmann timely appealed to our court.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1). “We review de novo the district court’s judgment in the appeal from the bankruptcy court, and apply the same de novo standard of review the district court used to review the bankruptcy court’s summary judgment.” Suncrest Healthcare Ctr. LLC v. Omega Healthcare *1235 Inv’rs (In re Raintree Healthcare Corp.), 431 F.3d 685, 687 (9th Cir. 2005).
ANALYSIS
Section 547(b) permits a bankruptcy-trustee to recover for the benefit of the bankruptcy estate preferential payments from a debtor to a creditor made within the ninety days preceding the filing of a bankruptcy. 11 U.S.C. § 547(b). To “avoid” such a payment, the trustee must show, among other things:
(5) that [it] enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b)(5) (emphasis added).
This element — 11 U.S.C.' § 547(b)(5) — constitutes the so-called “greater amount test,” which “requires the court to construct a hypothetical chapter 7 case and determine what the creditor would have received if the case had proceeded under chapter 7” without the alleged preferential transfer.[2] Alvarado v. Walsh (In re LCO Enters.), 12 F.3d 938, 941 (9th Cir. 1993) (LCO). Schoenmann challenges the $190,595.50 debt payment, claiming that section 547(b)(5) is satisfied in this case if BOTW “received a greater amount than it would have if the [debt payment] had not been made and there had been a hypothetical chapter 7 liquidation as of the petition date.” Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith’s Home Furnishings, Inc.), 265 F.3d 959, 963 (9th Cir. 2001) (Smith).
The bankruptcy court determined that BOTW did not receive more than it would have in á hypothetical liquidation because it maintained a right of setoff that entitled it to full payment, and Tenderloin’s deposit account held the requisite amount of funds on the petition date. Schoenmann argues, however, that the trustee would avoid the $526,402.05 deposit in a hypothetical liquidation, such that the deposit account would contain only $37,713.87 on the petition date, a sum far less than the $190,595.50 ' BOTW actually received, even allowing for its right of setoff.
BOTW objects to Schoenmann’s analysis for two reasons. First, BOTW insists it is impermissible to entertain a hypothetical preference action within a hypothetical liquidation. Second, BOTW claims that the deposit made by Tenderloin into its deposit account would not meet the definition of an avoidable preference. We find neither argument persuasive.
I. Section 547(b)(5) Does Not Forbid Courts from Considering Hypothetical Preference Actions.
The text of the Bankruptcy Code, its legislative history, and current practice *1236 in the bankruptcy courts -all support the conclusion that courts may entertain hypothetical preference actions within hypothetical chapter 7 liquidations. Further, our holding in LCO does not pose an obstacle to this conclusion.
A. Text and Legislative History
Statutory interpretation begins with the. text. Pakootas v. Teck Cominco Metals, Ltd., 830 F.3d 975, 980 (9th Cir. 2016). “If the meaning of the text is unambiguous, the statute must be enforced according to its terms.” Id.
Here, section 547(b)(5) permits the trustee to avoid any transfer within ninety days of bankruptcy that enables the creditor “to receive more than such creditor .would receive if — (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.” 11 U.S.C. § 547(b)(5) (emphasis added). The phrase “provisions of this title” appears to refer to the totality of Title 11 of the Code, which includes the preference provisions appearing in section 547. Accordingly, the text clearly does not directly forbid courts from considering hypothetical preference actions within a hypothetical chapter 7 liquidation. However, since the statute treats the issue globally, our understanding will be refined by considering the legislative history of section 547(b)(5).
Section 547 was included in the Bankruptcy Reform Act of 1978.[3] Pub. L. No. 95-598, 92 Stat. 2549 (1978). Describing element 547(b)(5), the Senate Committee Report states “the transfer must enable the creditor ... to receive a greater percentage of his claim than he would receive under the distributive provisions of the bankruptcy code.” S. Rep. No. 95-989, at 87 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5873 (emphasis added). The phrase “distributive provisions” might be thought to narrow the hypothetical liquidation to disbursement under chapter 7, but the very next sentence clarifies the meaning of the phrase: “Specifically, the creditor must receive more than he would if the case were a liquidation case, if the transfer had not been made, and if the creditor received payment of the debt to the extent provided by the provisions of the code.” Id. (emphasis added). The House Report echoes this language: “A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate.” H.R. Rep. No. 95-595, at 177 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6138. The phrase “participate[s] in the distribution” leaves room to assume the hypothetical chapter 7 trustee might initiate preference actions in conjunction with the “distribution” of the assets of the estate.
Evidence bearing more directly on this question appears in the paragraphs that follow the general overview of section 547(b)(5). The reports provide
The phrasing of the final element changes the application of the greater percentage test from that employed under current law. Under this language, the court must focus on the relative distribution between classes as well as the amount that will be received by the members of the class of which the pre-feree is a member. The language also *1237 requires the court to focus on the allow-ability of the claim, for which the preference was made. If the claim would have been entirely disallowed, for example, then the test of paragraph (5) will be met, because the creditor would have received nothing under the distributive provisions of the bankruptcy code.
H.R. Rep. No. 95-595 at 372 (emphasis added); accord S. Rep. No. 95-989 at 87. By invoking “allowability,” which refers generally to whether payment of a claim would violate some independent provision of the Bankruptcy Code, the report suggests it is appropriate to consider whether a hypothetical claim would be affected by the preference provisions. There are numerous cases that refer to the greater amount test as implicating the “distributive provisions” of the Code,[4] but in light of this history, we cannot exclude section 547 from the hypothetical chapter 7 “distribution.”
B. Current Practice Under the Bankruptcy Code
The view that courts may consider hypothetical preference actions within hypothetical chapter 7 liquidations is bolstered by the fact that bankruptcy courts are doing precisely that under two other provisions of the code.
Section 1129(a)(7)(A)(ii) requires bankruptcy courts to determine what creditors would receive under a hypothetical chapter 7 liquidation, and then compare that amount to what the same creditors would receive under a chapter 11 reorganization. It provides that a bankruptcy court may confirm a chapter 11 plan only if each holder of an impaired claim “will receive or retain ... property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.” 11 U.S.C. § 1129(a)(7)(A)(ii). Although “[t]he hypothetical liquidation analysis must be based on evidence and not assumptions in order to meet the best interests of creditors test,” Collier on Bankruptcy ¶ 1129.02 n.98 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) [hereinafter “Collier”] (citing In re MCorp Fin., Inc., 137 B.R. 219, 228-29 (Bankr. S.D. Tex. 1992)), “a trustee’s avoiding powers in a hypothetical chapter 7 case may [] affect the analysis,” id. ¶ 1129.02.
For instance, in In re Affiliated Foods, Inc., 249 B.R. 770 (Bankr. W.D. Mo. 2000), the court found the statute “requires an estimation of the value of all of the bankruptcy estate’s assets, including such hard to determine values as disputed and contingent claims, the potential disallowance of claims (under § 502(d)), the probability of success and value of causes of action held by the estate, and, in this case, potential preference actions.” Id. at 788 (internal citation omitted). Likewise, in In re Sierra-Cal, 210 B.R. 168 (Bankr. E.D. Cal. 1997), the court found “all provisions applicable in a chapter 7 liquidation are to be taken into account when the court determines what sums would be paid to whom in a hypothetical liquidation.” Id. at 174. It then applied two avoidance provisions in the hypothetical liquidation using the facts and testimony in the record. See id. at 174-75 (concluding “a competent chapter 7 *1238 trustee would be able to recover against [the creditor] under § 544 and § 549”).
Chapter 18 has a comparable “best interest of the creditors” test that requires the same comparison. Section 1325(a)(4) requires a bankruptcy court to confirm a chapter 13 plan if, among other things, “the value, as of the effective date of the plan, of property to be distributed under the plan ... is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.” When administering this provision, “eourt[s] must consider property that would be likely to be recovered by a chapter 7 trustee’s use of the avoiding powers.” Collier ¶ 1325.05; see also In re Larson, 245 B.R. 609, 614 (Bankr. D. Minn. 2000) (finding that in the hypothetical liquidation, the court “must look not only at the Debtor’s assets as listed on his schedules, but [it] must also consider the recovery of assets by the trustee through fraudulent transfer and preference actions”).
Lastly, we note that several courts have applied hypothetical setoff analyses under section 553 within hypothetical chapter 7 liquidations. See Durham v. SMI Indus. Corp., 882 F.2d 881, 884 (4th Cir. 1989) (“SMI would have been entitled to assert its right of setoff under section 553(a) post-petition if the check exchange had not been executed before Continental’s petition was filed since both debts were incurred pre-petition.”); Braniff Airways, Inc. v. Exxon Co., U.S.A, 814 F.2d 1030, 1040 n.11 (5th Cir. 1987) (“The fact that a setoff never actually took place does not affect the analysis. The issue is whether Exxon hypothetically had the right to a setoff, and because of this right it was secured and therefore the payment received from Braniff was not a voidable preference.”); Mason & Dixon Lines, Inc. v. St. Johnsbury Trucking Co. (In re Mason & Dixon Lines, Inc.), 65 B.R. 973, 976 (Bankr. M.D.N.C. 1986) (“In the case at bar, had the debtor not made the payment to the creditor carrier, the creditor could have offset the debt prepetition pursuant to section 553 or if the 30 days elapsed postpetition had the offset amount as a secured claim under section 506(a).”); Lingley v. Contractors Grp., Inc. (In re NEPSCO, Inc.), 55 B.R. 574, 576 (Bankr. D. Maine 1985) (“Had the debtor in this case not paid CGI the $6,221.56 prior to the filing of the Chapter 7 petition, CGI would have been entitled to a right of setoff under 11 U.S.C. § 553(a).”). True, hypothetical setoff analyses, unlike preference actions, do not require that we assume a party will initiate an adversary proceeding. That said, it would be odd to permit bankruptcy courts conducting hypothetical liquidations to look only to section 553, while ignoring other chapter 5 provisions, like section 547.
C. Our Prior Holding in LCO poses no bar.
In response, BOTW relies on our decision in LCO, which held “the hypothetical chapter 7 analysis required by § 547(b)(5) must be based on the actual facts of the case.” 12 F.3d at 940. Since Schoenmann has not challenged the deposit in Tenderloin’s actual liquidation, BOTW asserts we may not permit such a challenge in a hypothetical liquidation. A close reading of LCO reveals that this argument is misguided because it improperly relies on the decision’s broad language divorced from the context of the case.
In LCO, the debtor, LCO Enterprises, leased commercial space from a company named Lincoln. Id. LCO fell behind in paying rent and filed for chapter 11 bankruptcy, leading LCO and Lincoln to restructure their relationship. Id. Specifically, they changed the terms of the lease agreement, and LCO disclosed the terms *1239 of the revised agreement in its chapter 11 plan. Id. LCO then faced the decision of whether it would assume or reject the lease in bankruptcy. Id. Importantly, under chapter 11, the debtor-in-possession (LCO) stands in the shoes of the trustee. 11 U.S.C. § 1107. Additionally, if the debt- or was in default on an unexpired lease before filing for bankruptcy, the léase may not be assumed “unless, at the time of assumption,” the trustee cures the default and provides adequate assurance of future performance. 11 U.S.C. § 365(b)(l)(A)-(C). LCO, as trustee, assumed the revised lease and cured the default, in compliance with section 365(b). LCO, 12 F.3d at 942. The reorganization plan was eventually confirmed by the bankruptcy court. Id. at 940.
Two months after confirmation, a chapter 11 trustee was appointed to pursue any preferential payments. Id. The trustee sued to recover several rent payments LCO transmitted to Lincoln in the ninety days preceding the filing of its bankruptcy. Id. The action turned on the “greater amount test”; i.e., whether Lincoln received more than it otherwise would have in a hypothetical chapter 7 liquidation as of the petition date where the prepetition rent payment had not been made. Id. at 941.
The trustee argued that in a hypothetical liquidation, “a hypothetical chapter 7 trustee might have rejected the lease,” giving Lincoln an unsecured claim for its shortfall in rent, rather than the full payment it received when the lease was assumed and the default was cured. Id. at 942. The trustee also said the court “should exercise its own independent judgment as to whether, if the court were administering the estate under chapter 7, it would have assumed or rejected the lease” at the time of. the chapter 11 bankruptcy. Id. We rejected these arguments, holding “[t]he phrase ‘hypothetical chapter T ... does not mean that the bankruptcy court can construct its own hypothetical from whole cloth or from only some of the facts.” Id. at 944. Rather, “the hypothetical chapter 7 analysis required by § 547(b)(5) must be based on the actual facts of the case.” Id. at 940. Since the lease had been assumed, “the [bankruptcy] court could neither speculate that there was no lease nor assume that the lease was rejected.” Id. at 944. Those assumptions simply did not “reflect[ ] the facts at any time.” Id, Moreover, under section 365(b), once the lease was assumed, the requirement to cure any default was mandated. This gave; Lincoln a secured claim for all outstanding prepetition rent in the hypothetical liquidation, so it did not receive more than it otherwise would, precluding satisfaction of the greater amount test.[5]
Importantly, we also noted that if we deviated from the actual facts in the case, and assumed that the hypothetical chapter 7 trustee had rejected the lease, the trustee would be allowed to recover payments it was obligated to make to Lincoln to cure the default pursuant to section 365(b). Id. at 943. In other words, straying from the actual facts would permit “§ 547(b) to circumvent the requirements of § 365(b).” Id. To avoid such a statutory collision, we held “[t]he [t]rustee cannot have his leased property and his rent payments, too.” Id. at 943-44.
Mindful of this context, it is apparent that LCO required fidelity to the actual facts in the case because to hold otherwise under those circumstances would have violated an independent statutory provision of the Bankruptcy Code. Section 365(b) requires the trustee to pay the landlord all outstanding rent when a lease is assumed, but a preference action would permit the trustee to recover the very prepetition *1240 rent payments it owes the landlord under that provision. In light of this conflict, we conclude that LCO must be narrowly construed. To that end, courts that have followed LCO’s holding have done so when presented with the same statutory collision scenario. See In re Kiwi Int’l Air Lines, Inc., 344 F.3d at 314 (“[T]he assumption of a contract under 11 U.S.C. § 365 bars a preference claim by a trustee.”); In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir. 1996) (“Section 547 and § 365 are mutually exclusive avenues for a trustee. A trustee may not prevail under both. Nor may a subsequent trustee pursue one course, when her predecessor has pursued another.”).
Adding further support for the interpretation that LCO requires fidelity to the actual facts only when doing otherwise would violate an independent statutory provision, the opinion explicitly relies on the Eleventh Circuit’s decision in Seidle v. GATX Leasing Corporation, 778 F.2d 659 (11th Cir. 1985). See LCO, 12 F.3d at 943. There, a creditor held a chattel mortgage on a debtor’s aircraft which secured payments due under a note. Seidle, 778 F.2d at 660. The debtor made partial payments on the note within the ninety day period preceding its chapter 11 bankruptcy. Id. Once in bankruptcy, the debtor and creditor entered into a court-approved stipulation under 11 U.S.C. § 1110, obligating the debtor to cure its default in exchange for the debtor’s continued use of the aircraft. Id. at 661. The trustee later sued to recover as preferential The prepetition payments made on the note. Id. The court rejected the preference action because the trustee was seeking to recover payments it was obligated to make under the court-approved stipulation. See id. at 665 (“Pursuant to the section 1110 stipulation, a creditor is entitled to unpaid pre-petition payments, as defaults; a trustee may not later thwart the effect of the statute by challenging the validity of these transfers as preferences.”). As in LCO, if the court assumed a hypothetical trustee would have rejected the stipulation, it would be permitting a preference action that would undermine an independent statutory provision — section 1110.
In sum, LCO does not bar us in this case from assuming in a hypothetical liquidation that the hypothetical trustee would sue to recover the $526,402.05 deposit. Unlike in LCO, permitting such an action would not violate any other statutory provision, and it is consistent with the text and legislative history recited above.[6] *1241 Having established that section 547(b)(5) does not forbid courts from entertaining hypothetical preference actions, we next must determine if the deposit in this case would meet the definition of an avoidable preference.
II. In the Hypothetical Liquidation, the Trustee Would Avoid the Deposit as a Preference.
Schoenmann concedes BOTW would have a right of setoff in the hypothetical liquidation.[7] BOTW asserts it would exercise, that right sometime after the bankruptcy petition was filed. In that scenario, if we permit the hypothetical preference action, BOTW will have received more as a result of the debt payment than it would have received in a hypothetical chapter 7 liquidation.[8]
Hypothetical Post-Petition Setoff
“Where a creditor fails to exercise its right of setoff prior to the filing of the petition it does not lose the right, but must proceed in the bankruptcy court by means of a complaint to lift the automatic stay so as to be allowed to exercise its already existing right to offset.” Durham v. SMI Indus. Corp., 882 F.2d 881, 884 *1242 (4th Cir. 1989) (internal quotation marks omitted). In accordance with that procedure, in the post-petition scenario BOTW would move to lift the stay, submit a proof of claim, and then argue its right of setoff entitles it to receive $190,595.50. “Mandatory claim disallowance under .§ 502(d),” however, “is one Bankruptcy Code provision that applies in chapter 7 liquidations.” In re Sierra-Cal, 210 B.R. at 173. “It requires that the court disallow ‘any claim’ of any entity from which property is recoverable by a trustee, or that is the transferee of an avoidable transfer, unless and until the property is turned over and the transfer is paid.”[9] Id. Pursuant to this provision, the bankruptcy court likely would decide the trustee’s hypothetical preference action before allowing BOTW’s claim. It therefore would consider whether the deposit satisfies the elements of section 547(b).
The Section 547(b) Elements.
As previously noted, section 547(b) requires that the “transfer” be (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt, (3) made while the debtor was insolvent, (4) made within 90 days of the bankruptcy, and (5) one which permits the creditor to receive more than it would in a hypothetical liquidation where the challenged payment had not been made. 11 U.S.C. § 547(b)(1) — (5). BOTW argues that in the hypothetical preference action it would no longer be a “creditor,” the deposit would not be “for or on account of an antecedent debt,” and the deposit would not constitute a “transfer.”[10] We disagree.
In the hypothetical liquidation where the debt payment had-not been made, BOTW would still be a creditor because it would be owed the $190,595.50 it loaned to Tenderloin. Though it is a closer question, the deposit also would be “for or on account of an antecedent debt.” True, Tenderloin transferred the $526,402.05 in proceeds having already satisfied its preexisting debt, but the 1978 revision to the bankruptcy statute defined preferences “solely with respect to a payment’s effect on the size of the debtor’s estate.” Marathon Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1566 (11th Cir. 1986); see also Vern Countryman, The Concept of a Voidable Preference in Bankruptcy, 38 Vand. L. Rev. 713, 748 (1985) (“The function of the preference concept is to avoid pre-bankruptcy transfers that distort . the bankruptcy policy of distribution. Transfers that do distort this policy do so without regard to the state of mind of either the debtor or the preferred creditor.”).[11] By that measure, in the hypothetical liquidation, the deposit would have the effect of diminishing the funds available to Tenderloin’s creditors because it would increase *1243 the size of BOTW’s secured claim against the bankruptcy estate. The deposit would also constitute a “transfer” under the terms of the Bankruptcy Code. It would subject the funds to BOTW’s security interest, give BOTW title to the funds, and deplete the assets available for distribution to Tenderloin’s creditors. Tenderloin therefore would be “disposing of or parting with ... an interest in property.” 11 U.S.C. § 101(54)(D); see also Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1282 (9th Cir. 1996) (finding that “depositing money into a bank account is a transfer” and correspondingly concluding that withdrawing money from a bank account is a transfer).
Arguing to the contrary, BOTW invokes New York County National Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904). There, the Supreme Court observed that
a deposit of money to one’s credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift or security.
Id. at 147, 24 S.Ct. 199 (emphasis added). For several reasons, we are not persuaded by BOTW’s invocation of Massey. As previously noted, “[i]n 1978, Congress fundamentally restructured bankruptcy law by passing the new Bankruptcy Code.” Begier v. Internal Revenue Service, 496 U.S. 53, 63, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Among other changes, Congress elected to expand the Code’s definition of the term “transfer.”[12] S. Rep. No. 95-989 at 27; accord H.R. Rep. No. 95-595 at 314. Pursuant to the revision, “any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property.” Id. Applying that definition, the committee reports state squarely that “[a] deposit in a bank account or similar account is a transfer.” Id. The Massey court had no occasion to contemplate these amendments; it considered only the Bankruptcy Code’s former and narrower definition of “transfer.”
We, however, had occasion to consider the revised definition of “transfer” in Bernard v. Sheaffer, 96 F.3d at 1282. There, the debtors withdrew money from an account and placed it in a safe. Id. at 1281. They argued that withdrawals did not constitute transfers because the assets “merely changed form.” Id. at 1282. We held, that the debtors’ argument “fail[ed] to take proper account of the Bankruptcy Code’s definition of ‘transfer,’ which is extremely; broad.” Id. (emphasis in original). Recognizing that title passes to the bank when funds are deposited, we said the debtors owned only “claims against their bank.” Id. at 1283. “When they withdrew from their accounts,” however, “they exchanged debt for money” and thus “parted with property, satisfying the Code’s definition of transfer.” Id. “Under the holding in Bernard, there is no ambiguity around the *1244 definition of a transfer; withdrawals and deposits into bank accounts clearly qualify.” A & H Ins., Inc. v. Huff (In re Huff), No. 12-05001-BTB, 2014 WL 904537, at *6 (9th Cir. BAP Mar. 10, 2014). As' is the case here, a deposit “exchanged] money for debt ... resulting] in a ‘parting with’ property under the holding in Bernard, as a matter of law.” Id.-, see also Batlan v. Bledsoe (In re Bledsoe), 569 F.3d 1106, 1113 (9th Cir. 2009) (invoking Bernard’s, interpretation of “transfer” in the context of another section of the Bankruptcy Code).[13]
Next, even though “[a] debtor’s bank deposit ordinarily constitutes a transfer of the debtor’s property to the title and possession of the bank,” some courts nonetheless have asked “whether this ‘transfer’ is of a kind [that] section 547 invalidates.” Collier ¶ 547.03[l][b] (emphasis added) (citing New Jersey Nat’l Bank v. Gutter-man (In re Applied Logic Corp.), 576 F.2d 952 (2d Cir. 1978); Katz v. First Nat’l Bank of Glen Head, 568 F.2d 964 (2d Cir. 1977)). Though we doubt such an inquiry is warranted when deciding whether a transaction constitutes a transfer,[14] even assuming it is, the asserted standard is met here.
The pertinent question is whether the deposit depletes the assets of the estate available for distribution to creditors. See Begier, 496 U.S. at 58, 110 S.Ct. 2258 (stating that the preference provision is designed to “preserve the property includable within the bankruptcy estate”).[15] On the specific facts of this case, as noted before, the deposit would have that effect. No bankruptcy creditor had an interest as far as we are aware in Tenderloin’s real property. Moreover, if the deposited funds had not been transferred — and therefore remained in escrow — they would have passed to the estate and thus to other *1245 creditors. Through the deposit, however, one creditor — BOTW—gained a beneficial interest in the funds. BOTW also became indebted to Tenderloin for $564,115.92, and correspondingly increased its right to exercise a setoff for the full amount of its loan. The deposit therefore represents the kind of pre-petition “transfer” that the preference provisions target. See, e.g., Meoli v. The Huntington Nat’l Bank (In re Teleservices Grp., Inc.), 469 B.R. 713, 744-47 (W.D. Mich. 2012) (stating that “Massey has become an anachronism” and finding that a deposit in a bank account pledged as collateral for a loan fits the definition of an avoidable transfer); Ivey v. First Citizens Bank & Trust Co., 539 B.R. 77, 87 n.14 (M.D.N.C. 2015) (noting that in Teleservices “a part of the transfers were deposits into bank accounts that themselves served as security for the line of credit that the defendant bank extended to debtor. Therefore, whether or not the bank actually exercised its rights against the accounts, the deposits themselves created an actual or potential diminution of the estate by subjecting the funds to the bank’s power under this credit agreement” (citation omitted)).
The implication of the above is that if BOTW sought to exercise its right of setoff after the petition was filed, the hypothetical preference challenge to the deposit would still be successful. As a consequence, Tenderloin’s account functionally would contain $37,713.87 on the petition date, a sum far less than the $190,595.50 BOTW received, even allowing for its right of setoff.[16] Under the hypothetical facts, the trustee could demonstrate that the elements of section 547(b)(5) would be met.[17]
CONCLUSION
We hold that courts may entertain hypothetical preference actions within section 547(b)(5)’s hypothetical liquidation when such an inquiry is factually warranted, supported by appropriate evidence, and so long as the hypothetical preference action would not result in a direct conflict with another section of the Bankruptcy Code.
Here, the undisputed facts demonstrate that BOTW received two transfers simul *1246 taneously within ninety days of Tenderloin’s bankruptcy. We are also satisfied that in a hypothetical liquidation where the debt payment had not been made, the hypothetical bankruptcy trustee would challenge as preferential the $526,402.05 deposit, as would any reasonable bankruptcy trustee. Once we permit such a hypothetical preference action, Schoen-mann can demonstrate that BOTW received more as a result of the debt payment than it would in a hypothetical chapter 7 liquidation. As a consequence, the trustee can prove each required element of his claim, and BOTW has not shown it is entitled to judgment as a matter of law.
We REVERSE the district court’s judgment in favor of BOTW. BOTW’s summary judgment motion is therefore DENIED, and the matter is REMANDED to the district court with directions to remand the matter to the bankruptcy court for further proceedings consistent with this opinion. Appellee shall bear costs on appeal. Fed. R. App. P. 39(a)(3).
REVERSED and REMANDED.

. There appears to be a factual dispute concerning the amount in Tenderloin's deposit accounts on the date ninety days preceding the filing of its bankruptcy. We need not resolve this dispute because the difference in the amounts is not material to the outcome.

. It may at first blush seem incongruous to ask what the creditor would have received if "the case were a case under chapter 7,” given that this matter is in fact a chapter 7 liquidation. The reference to chapter 7, however, defines the character of the hypothetical bankruptcy, which is then used as a point of comparison to see if the pre-petition payments rendered the preferred creditor better off. We have previously recognized that a preference action is permissible under section 547(b), even when filed in conjunction with a chapter 7 liquidation. See, e.g., USAA Fed. Savings Bank v. Thacker (In re Taylor), 599 F.3d 880, 885-88 (9th Cir. 2010) (affirming decision" concerning a preference action brought in the course of a chapter 7 liquidation); Busseto Foods, Inc. v. Charles Laizure (In re Laizure), 548 F.3d 693, 695 (9th Cir. 2008) (chapter 7 trustee brought preference action); Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.), 482 F.3d 1118, 1122 (9th Cir. 2007) (same).

. The preference provisions first appeared as sections 60a and 60b of the Bankruptcy Act of 1898. See The Bankruptcy Act of 1898 § 60, Ch. 541, 30 Stat. 544, 562 (1898). The Bankruptcy Reform Act of 1978 superseded those provisions but retained the same basic elements.

. See, e.g., Guttman v. Constr. Program Grp. (In re Railworks Corp.), 760 F.3d 398, 402 (4th Cir. 2014) (stating that under section 547(b)(5), a transfer "must enable the creditor to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case under the Bankruptcy Code”); Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int’l Air Lines, Inc.), 344 F.3d 311, 321 (3rd Cir. 2003) (observing a “trustee could not satisfy § 547(b)(5) because the pre-petition payments did not improve the creditor's position under the distributive provisions of the Bankruptcy Code”).

. “If a creditor is fully secured, a prepetition transfer to him is not preferential because the secured creditor is entitled to 100% of his claim.” LCO, 12 F.3d at 941.

. Additionally, though BOTW is correct that we are permitting the hypothetical trustee to do something the actual trustee did not do, the actual trustee had no incentive to challenge tire deposit when the bankruptcy was filed. BOTW turned over the $564,276.83 in Tenderloin’s accounts on November 12, 2012. The trustee then brought this action in the bankruptcy court roughly one month later. These facts are significant because the voluntary turnover to the trustee of the property subject to a creditor’s right of setoff generally precludes any subsequent claim of setoff by the creditor. See Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (noting that requiring a creditor immediately to turnover funds on account "would divest the creditor of the very thing that supports the right of setoff”); In re Mauch Chunk Brewing Co., 131 F.2d 48, 49 (3d Cir. 1942) (finding that when trustee withdrew funds from account with bank’s knowledge of bankruptcy filing, bank's acquiescence was "tantamount to renunciation of its privilege of setoff”). If BOTW loses this preference action, it might be able revive its right of setoff given "court[s] may remedy the effect of an inadvertent, involuntary or improper dissipation of the creditor’s interest.” Collier ¶ 553.07; see also In re Archer, 34 B.R. 28, 31 (Bankr. N.D. Tex. 1983) (finding where bank had mistakenly turned over property it did not intentionally waive its right of setoff). Still, even allowing for that possibility, it would not be reasonable to assume the trustee had an incentive to challenge the deposit from the outset of this proceeding. BOTW had turned over the funds that supported the right *1241 of setoff, so there was little reason for the trustee to fear BOTW would later assert such a right if the preference action was successful and the bank disgorged the debt payment.

. “The right of setoff (also called offset’) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding -the absurdity of making A pay B when B owes A.” Newbery Corp. v. Fireman’s Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 1996) (quotation marks omitted). There is no federal right of setoff, but “11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.” Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). California law recognizes a bank's right to setoff against a depositor’s account. Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 357-58, 113 Cal.Rptr. 449, 521 P.2d 441 (1974). Accordingly, BOTW’s right of setoff is preserved in the hypothetical liquidation if it meets the requirements of section 553. Three conditions must be shown: "(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual.” United States v. Carey (In re Wade Cook Fin. Corp.), 375 B.R. 580, 594 (9th Cir. BAP 2007). In a hypothetical liquidation as of the petition date, these requirements are met. Tenderloin, the debtor, would owe BOTW, the creditor, a prepetition debt because the alleged preferential transfer would not have taken place, meaning the loan balance ($190,595.50) would be outstanding. BOTW would owe Tenderloin a prepetition debt arising from the deposit of the property sale proceeds. See Strumpf, 516 U.S. at 21, 116 S.Ct. 286 (explaining banks obtain title to deposited funds subject to a promise to pay the depositor); Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) ("The relationship of bank and depositor is that of debtor and creditor, founded upon contract.”). Finally, the debts are mutual because they involve obligations owed between the same parties.

. The result would not be different even if BOTW were to argue that it would exercise its hypothetical setoff right prior to the filing of the petition. Prepetition setoffs aré generally challenged in three ways, only one of which would apply here. Section 553(b) provides that if a creditor exercises a setoff within ninety days of the bankruptcy, the trustee may recover the amount by which the creditor improved its position between the ninetieth day before the filing and the date of the bankruptcy. See 11 U.S.C. § 553(b). Ninety days before filing, Tenderloin’s accounts contained approximately $173,015.00. We also must assume that BOTW would elect to setoff the full $190,595.50. BOTW would thus improve its position by $17,580.50 under this scenario. The trustee would be able to recover that amount from BOTW. At bottom, if BOTW exercised its hypothetical setoff right prior to the filing of the petition, it still received more in reality than it would in the hypothetical liquidation because it actually received $190,595.50, but would receive only $173,015.00 in the hypothetical.

. "The § 502(d) disallowance is in the nature of an affirmative defense to a proof of claim and does not provide independent authority for affirmative relief against the creditor." In re Sierra-Cal, 210 B.R. at 173.

. BOTW does not dispute the other section 547(b) elements, and they appear to be satisfied. The deposit was made on June 13, 2012, so it occurred within ninety days of the filing ' of the petition. 11 U.S.C. § 547(b)(4)(A). In the absence of the deposit, BOTW would not have been able to setoff the full $190,595.50, so the trustee could satisfy the "greater amount test.” Id. § 547(b)(5).

.Notably, a debtor’s subjective intent may be relevant in determining the applicability of an affirmative defense. See, e.g., 11 U.S.C. § 547(c)(2) (providing there is no preference where a payment was made according to ordinary business terms); In re Craig Oil Co., 785 F.2d at 1566 ("[A] creditor’s state of mind is now immaterial in finding a preference. ... It does not follow from the above that a debtor's state of mind or motivation is likewise immaterial in applying the preference exception of § 547(c)(2).”).

. In 1904, a transfer was defined "to include the sale and every other and different method of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security.” Massey, 192 U.S. at 146, 24 S.Ct. 199; see also The Bankruptcy Act of 1898 § 1, Ch. 541, 30 Stat. 544, 545 (1898). Today, the parting may be with a mere "interest in property” and need not be done "as a payment, pledge, mortgage, gift, or security.” See 11 U.S.C. § 101(54); Smiley v. First Nat’l Bank of Belleville (Matter of Smiley), 864 F.2d 562, 565 (7th Cir. 1989) (“[W]e find that the narrow definition of ‘transfer’ ... can no longer be the law since the Bankruptcy Reform Act took effect.”).

. Massey is also factually distinguishable. Here, unlike in Massey, the accounts were pledged as security on an antecedent loan, and the deposit itself would render BOTW fully secure. Cf. Smith, 265 F.3d at 964 ("[PJayments that change the status of a creditor from partially unsecured to fully secured at the time of petition may be preferential.”); Porter v. Yukon Nat’l Bank, 866 F.2d 355, 359 (10th Cir. 1989) (finding transfer preferential where "the effect of the transfer was to change the status of the Bank from that of a partially unsecured creditor to that of a fully secured creditor”). It is also worth noting that the Supreme Court instructs us to look to the "actual effect” of the deposit in bankruptcy, Palmer Clay Prods. Co. v. Brown, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936), and as explained further below, the deposit would deplete the estate's assets. The concurrence is simply incorrect in stating that the deposit "made no difference to the bank's security position.” BOTW’s security interest only attached because the deposited funds were transferred out of escrow.

. Both of the cited decisions were decided prior to the 1978 amendments to the Bankruptcy Code. In addition, the "diminution of estate” doctrine is used “to determine whether property that is transferred belongs to the debtor,” not whether a transaction constitutes a transfer. See Adams v. Anderson (In re Superior Stamp & Coin Co.), 223 F.3d 1004, 1007 (9th Cir. 2000). To the extent that BOTW insists the deposit was not a transfer "of an interest of the debtor in property,” see id. that argument has been waived, Officers for Justice v. Civil Serv. Comm’n, 979 F.2d 721, 726 (9th Cir. 1982). Finally, the concurrence concedes that the deposit is a "transfer,” but insists it is not the right kind of transfer because Massey allegedly controls when determining “what makes a preference.” We are convinced that satisfying the elements of § 547(b) "makes” a transfer "a preference,” and the concurrence does not disagree that those elements would be satisfied here.

.The key aspect of this investigation is not whether the exercise of a setoff right depletes the estate's assets, see Concurrence at 3, as that' necessarily is true in every case. The question is whether the deposit depletes the estate’s assets because deposits do not always afford the bank a right of setoff, nor are deposit accounts always pledged as security for a loan.

. We decline to adopt the post-petition setoff analysis suggested by the concurrence. First, though there is no question that setoffs are governed by section 553, the trustee has never argued that it would challenge a hypothetical post-petition setoff. Instead, Schoenmann asserts only that the hypothetical trustee would challenge the deposit as an avoidable preference. Next, while the exercise of a setoff results in a permissible preference because it does not constitute a transfer under the Bankruptcy Code, Collier ¶ 553.09[l][a], here we have a pre-petition transfer that renders a creditor fully secure, and thus it is not immune from preference liability. See supra at 1244 n.13. Lastly, though the concurrence applies section 553(b) to a hypothetical post-petition setoff, the plain language of the statute indicates that section 553(b) applies only to pre-petition setoffs. See 11 U.S.C. § 553(b)(1) (stating that "if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such a creditor the amount so offset” subject to certain conditions (emphasis added)); see also Collier ¶ 553.09[2][c] ("The better result is to limit section 553(b) to setoffs actually taken prepet-ition. In addition to remaining true to the language of the text, that result is consistent with the underlying purpose of section 553, which it to encourage creditors not to take setoffs by generally preserving their setoff rights.”).

. BOTW mentions in passing one hypothetical affirmative defense — that the bank "would not be liable pursuant to 11 U.S.C. § 550.” Since BOTW does not develop the argument, however, we decline to reach it. See W. Watersheds Project v. Kraayenbrink, 632 F.3d 472, 499 (9th Cir. 2010); Int’l Healthcare Mgmt. v. Hawaii Coalition for Health, 332 F.3d 600, 609 (9th Cir. 2003).